20 So.2d 168

**LOUISIANA STATE BAR ASS'N v. CONNOLLY.**

No. 36663.

Nov. 6, 1944.

O'Neill & O'Neill and Robert A. Ainsworth, Jr., all of New Orleans, for Mrs. Mary H. Connolly.

Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, Frank Wm. Hart, of New Orleans, Guy V. Rich, of Bogalusa, and Benjamin Y. Wolf, of New Orleans, Chairman, for Supreme Court Committee on Professional Ethics and Grievances.

HAMITER, Justice.

In the United States District Court for the Eastern District of Louisiana, New Orleans Division, at the February, 1941, term, an indictment was returned charging Mary H. Connolly and her husband, Joseph H. Connolly, with willfully attempting to defeat and evade the payment of income taxes due the United States for the years 1936, 1937, 1938 and 1939.

On March 4, 1942, having been convicted on their respective pleas of nolo contendere of the offenses charged, those persons were sentenced to pay fines aggregating approximately $4,000 for each, and also the costs of the prosecution and certain penalties and interest. Neither was given a prison sentence; however, both were

placed on probation for five years, subject at all times to the orders of the court.

Subsequently, specifically on April 9, 1942, the instant disbarment proceeding was commenced with the filing in this court of the petition of the Louisiana State Bar Association, appearing through its Committee on Professional Ethics and Grievances. Petitioner alleged that Mary H. Connolly, an attorney-at-law of New Orleans, had been convicted of a felony (the income tax evasion referred to above), and that the judgment of conviction had become final. It prayed that she be ordered "to show cause on a day to be fixed by this court why her name should not be stricken from the roll of attorneys and why her license to practice law in the State of Louisiana should not be cancelled." Attached to and made a part of the petition was a certified copy of the judgment.

The Committee, in making this demand, invoked the provisions of Section 12 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association (also a rule of this court), which read:

"Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President

of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment."

Respondent, in response to the issued order and rule to show cause, excepted to the petition as stating no cause of action. The exception, grounded upon numerous contentions, was overruled by a divided court after lengthy and thorough consideration of it. See 201 La. 342, 9 So.2d 582, 593.

Answering, respondent denied that she had been guilty of the offense charged in the indictment, or of any misconduct such as would warrant her name being stricken from the roll of attorneys.

On the matter being thus placed at issue, Mr. Alfred D. Danziger, an attorney-at-law who had engaged in active practice for a period of not less than ten years, was appointed Commissioner to hear and receive the evidence and to report to this court his findings of fact and conclusions of law.

As he was directed to do, the Commissioner conducted the hearing, and thereafter he filed in this court a transcript of the evidence adduced and also his written report. In the report he analyzes the testimony of the witnesses, discusses the various principles of law applicable to the controversy, and concludes with a recommendation that the proceedings against respondent be dismissed.

The Committee has excepted to the report, assigning various and numerous errors committed by the Commissioner. It is on these exceptions that the matter is presently being considered.

At the commencement of the Commissioner's hearing, the Committee introduced "in evidence certified copy of the judgment of conviction, dated March 4, 1942, of Mrs. Mary H. Connolly and Joseph H. Connolly * * *." Then it announced: "That is the Committee's case."

Thereupon, respondent proceeded to offer evidence, calling as her first witness her husband, Joseph H. Connolly. Immediately, the Committee objected "to any testimony in this matter on the ground that any evidence would be immaterial, irrelevant and inadmissible, being an attempt to collaterally attack the conviction of the defendant in the United States District Court.

"We further object on the ground the judgment of conviction is now a final and conclusive judgment rendered under the Constitution and Laws of the United States by Courts created pursuant to the Constitution by the Congress of the United States, and therefore, said judgment and conviction must be given full force and effect by all State Courts.

"The Committee further objects on the ground the offering of such evidence is an attempt to have the Commissioner appointed by the Supreme Court of Louisiana, and eventually have the Court, reopen and try the criminal charges for which the defendant was convicted in the United States District Court for the Eastern District of Louisiana."

The Commissioner overruled the objections and admitted the evidence. This ruling is the basis for four of the Committee's exceptions to the report, they being num-

bered 1, 7, 10 and 11. The complaint, under those exceptions, is that the Committee, as its brief declares, "does rely entirely upon the conviction by the court under the plea of nolo contendere under the charge which is a felony and, therefore, under the rule the objection to all evidence should be sustained."

That the evidence was correctly admitted, and that those exceptions can not be maintained, is manifested, by what was said in the majority opinion, above referred to, attending a consideration by us of respondent's exception of no cause of action. Under that pleading respondent had contended that the rule herein invoked by the Committee (the one authorizing the disbarment of an attorney upon the presentation of a certified copy of a judgment evidencing his conviction of a felony) is unconstitutional in that it does violence to the provision of our Constitution (Section 10 of Article VII) which grants and limits to this court "exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar * * *." We held that the rule was not unconstitutional for the reason that the judgment of conviction is not conclusive in a proceeding of this kind; it is only prima facie evidence of misconduct or moral turpitude, and the person sought to be disbarred has the right and privilege of refuting it with countervailing proof. In the course of our opinion we said that:

"* * * our jurisdiction in disbarment cases is limited to matters involving misconduct and we cannot create by rule grounds for disbarment which are not pre-

dicated upon wrongdoing. Our rule is one of evidence affecting the burden of proof. It is founded solely on the misconduct of the attorney and under it the court has retained full discretion to render such decree as it deems proper in the case."

This holding, obviously, is eminently sound. An attorney might well be convicted of a felony and yet not be guilty of indiscretions relating to his fitness to engage in the practice of law. An excellent example is that of a conviction of the crime of negligent homicide, a felony under our law. In such a case certainly the person adjudged guilty should have the opportunity of showing his freedom from that misbehavior for which disbarment lies.

Contained in the objections offered by the Committee at the Commissioner's hearing is a suggestion that to admit evidence of the respondent, following the introduction of the judgment of conviction, would amount to a retrial of the criminal charges for which the attorney was convicted. Such a retrial, of course, would not occur or be permitted. This court is interested only in determining whether or not there existed the transgression required for disbarment; and the Commissioner, acting for the court, would restrict the evidence accordingly.

Moreover, the fact that respondent entered a plea of nolo contendere to the charge of willful income tax evasion, and on it she was convicted, does not in our opinion serve to prevent her offering herein the defense of freedom from dishonest and improper conduct. A plea of nolo contendere is not technically a plea of guilty, but

it is one in substance if accepted by the court; for when so accepted, it becomes an implied confession of guilt. However, it has no effect beyond the particular case, and it can not be employed against the defendant as an admission in any civil suit for the same act. In other words it does not estop the defendant to plead and prove his innocence in a civil action. Chester v. State, 107 Miss. 459, 65 So. 510; Fidelity-Phenix Fire Insurance Company of New York v. Murphy, 231 Ala. 680, 166 So. 604; Olszewski v. Goldberg, 223 Mass. 27, 111 N.E. 404; In re Smith, 365 Ill. 11, 5 N.E.2d 227; Tucker v. United States, 7 Cir., 196 F. 260, 116 C.C.A. 62, 41 L.R.A.,N.S., 70; Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347.

Under its exception Number 2, tendered to the report, the Committee complains of an asserted holding of the Commissioner that respondent's conviction of the income tax evasion did not constitute moral turpitude. What the Commissioner held, as we understand his report, was that Mrs. Connolly had made a defense which "has overcome any presumption or prima facie case arising out of the judgment of conviction for violation of the income tax law." As we said on our consideration of the exception of no cause of action, and as shown above, respondent was entitled to offer such a defense. The question of whether or not it constitutes a successful rebuttal of the prima facie case, created by the introduction of the judgment of conviction, is one which addresses itself to the merits of the matter, a phase which we shall discuss hereinafter.

■ Next the Committee, under exception Number 4, points out that respondent has been found guilty of an offense which deprives her of her citizenship. In this connection it cites Section 6 of Article 8 of our Constitution and Act No. 129 of the Legislature of 1940, both of which provide for the disfranchisement of a person on a conviction of a crime that may be punishable by imprisonment in the penitentiary. Then it contends that a disfranchised person can not, under any circumstances, be permitted to engage as a legal practitioner. Our law does not seem to support this contention. Neither the constitutional provision nor the statute cited by the Committee mentions disbarment. On the other hand, Section 10 of Article VII of the Constitution deals specifically with disbarment and limits it to "cases involving misconduct." Furthermore, the rule invoked in this proceeding states merely that the court may disbar an attorney for a felony conviction; it does not make mandatory the expulsion.

■ Another exception to the report (Number 3) is that "it fails to find that the revenues which were accounted for represented the separate estate of the wife * * *." Whether Mrs. Connolly's income (fees obtained in the practice of her profession while living with her husband) belonged to her separate estate or constituted community assets seems to us to be clearly beside the point. Even if her earnings were her separate property that would have no bearing on the issue concerning her moral conduct in connection with the alleged tax evasion.

This brings us to exceptions numbered 5 and 6 which deal with the merits, the Committee showing thereunder that the Commissioner's recommendations are contrary to the facts.

As before stated, the Committee introduced in evidence the certified copy of the judgment of conviction and rested its case. Then commenced the testimony of Joseph H. Connolly, to whom respondent was married in 1925. According to him, he has engaged in business with one A. Frank, under the trade name of Standard Fur Company, since 1931. Besides that occupation, he has served as law clerk for his wife, handling all of her books, records, collections and bank accounts. As to the preparation of their income tax returns, especially those for the years 1936, 1937, 1938 and 1939, about which the conviction resulted, he said:

"I prepared all returns, assimilated all the information, made up the returns, not only for those years, but other years. Those returns were always made on the last day, and I would have her to sign them in blank. Mrs. Connolly at no time had anything to do with income tax returns from then on since we have been married. I prepared those returns, drew the checks for the returns, and Mrs. Connolly signed the checks in blank and signed the returns in blank."

Separate, not joint, returns were filed, each listing one-half of the community income.

In May, 1940, so Mr. Connolly further said, he requested of an internal revenue agent, who was then inspecting the books of the Standard Fur Company, that an examination be made of the records pertaining to the income of him and his wife, he having realized a short time previously that certain discrepancies in their returns existed. The agent replied that authority from Washington was necessary before such could be done. On the obtaining of the authorization, some three weeks later, the investigation commenced; and for a considerable period of time it was carried on by three of four agents, with the husband and wife furnishing all possible assistance. From these agents, during the course of their work, Connolly received assurances that no prosecution for tax evasion would take place; that only the payment of any deficiency found due and owing would be demanded. However, after they had assisted in gathering all of the necessary information, he and his wife were prosecuted, this being contrary to his agreement and understanding.

Also, Connolly testified that the pleas of nolo contendere were entered because the case was then made out by the government and he and his wife had the assurance that no prison sentence would be given either of them.

The testimony of Mrs. Connolly, who has practiced law since 1926, corroborates in every respect that of the husband with reference to the keeping of her books, the preparation and filing of their returns, and the issuance of checks. Additionally, she said that she had no reason to believe, when the returns were filed by the husband, that they were incorrect.

When questioned about the circumstances surrounding their entering the pleas of nolo contendere, she replied:

"There were naturally many conferences held on what plea he should enter. My attorneys felt from the beginning, as I did, that on the trial of the case I would not have been convicted, but just a question of what was the best thing to do for Mr. Connolly's interest, so then the plea of nolo contendere was taken up with the District Attorney's office by my attorneys, and they were willing to accept it."

Further, she said that the judge, in her presence and shortly before the pleas were offered, informed her attorneys that no prison sentences would be imposed.

Again, as to the possible effect such a plea might have on her standing as an attorney, she testified:

"We gave it serious consideration. My attorneys representing me had a conference one day and went up to the District Attorney's office to ask what their opinion was about that, and what they brought back to me was, the opinion that was finally arrived at, that since the violation of income tax statute did not involve moral turpitude, they did not think it would affect my standing, and the plea of nolo contendere against me would not be admissible in any other case."

The Committee, in urging its demand for disbarment, requests us to disbelieve and brand as false the testimony of Mr. and Mrs. Connolly. But there is nothing in the record, which is our sole guide in determining the merits, warranting our taking that position. At the hearing before the Commissioner the Committee offered no evidence whatsoever to impeach or disprove the testimony of respondent and her husband or to discredit either of them. Not one of the government agents was called, as might have been done, to contradict their statements that certain agreements existed in connection with the compiling of the tax information. Instead of rebutting such testimony, the Committee relied entirely on the judgment of conviction, which, as previously shown, made out merely a prima facie case of misconduct.

Had respondent offered no evidence to overcome the prima facie case, we would be justified in disbarring or suspending her on the strength of the judgment. Such was the situation in Louisiana State Bar Association v. Steiner, 204 La. 1073, 16 So. 2d 843. Here, however, the presumption created by the judgment's introduction, in our opinion, has been successfully refuted. To our minds the explanation provided through respondent's evidence is plausible. It is not at all unusual for a husband, thoroughly proficient in matters of accounting and finance, to assume full responsibility in the preparation and filing of the tax return of the wife, even though the latter be a practicing lawyer and the producer of the greater portion of the community's earnings. Quite appropriate to this observation is the following extract taken from the Commissioner's report:

"Do we not know that many of us, even among the oldest and most conscientious members of the bench and of the bar, have preferred to delegate to accountants the

tedious and time-consuming preparation of exceedingly complicated and baffling income tax returns under everchanging Federal statutes so involved and intricate as to now require complete revision and simplification by the Congress?"

Therefore, for the reasons above given, it is ordered, adjudged and decreed that the petition of the Louisiana State Bar Association, filed on April 9, 1942, and in which the disbarment of Mrs. Mary H. Connolly is demanded, be and it is hereby dismissed.

O'NIELL, C. J., recused.

FOURNET, J., concurs in the decree.