## No. 17,484.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUNBAR
v. GEORGE FISCHER.
(287 P. [2d] 973)

Decided July 18, 1955.

Mr. DUKE W. DUNBAR, Attorney General, Mrs. PATRICIA H. MALOY, Assistant Attorney General, for the relator.

Mr. ISAAC MELLMAN, Mr. GERALD N. MELLMAN, for the respondent.

*En Banc.*

MR. JUSTICE LINDSLEY delivered the opinion of the Court.

THE People of the State of Colorado upon the relation of Duke W. Dunbar, Attorney General, seek from this Court a writ to show cause why respondent should not have his license to practice law revoked, and have his name stricken from the roll of licensed attorneys, charging that respondent on June 29, 1953, was convicted in the United States District Court for the District of Colorado of the crime of wilfully defeating and evading income tax payments in violation of section 145 (b), Title 26, United States Code, which is denominated a felony by said Act; that upon conviction respondent was sentenced to serve two years imprisonment upon count one of the indictment, and upon count two thereof he was placed upon probation for five years after the expiration of the term of imprisonment imposed on count one.

Petitioner further alleges that respondent appealed to the United States Court of Appeals, Tenth Circuit, on July 8, 1953, and on June 21, 1954, his conviction was upheld in all respects, whereupon this Court issued its order upon the respondent to show cause why he should not be prohibited from practicing law and disciplined as the Court shall determine.

In compliance with the order to show cause respondent alleged as follows:

1. Admits the conviction in the United States District Court for District of Colorado of a felony.

2. Denies that the offense involved moral turpitude or that his actions disclosed unscrupulous conduct or moral turpitude or intentional misconduct.

3. Alleges that respondent was entitled to his requested bill of particulars, and as a result of the denial of such request he had no way of contemplating certain evidence presented at the trial by the government in reference to his failure to report as income certain "pay

off" or "protection" money, whereas the gist of the indictment was failure to report income received by him.

4. That in case of *United States v. Mayberry,* No. 13,284, the trial of which occurred immediately thereafter, respondents and Mayberry's counsel had an opportunity to refute this "pay off" or "protection" evidence and said Mayberry was acquitted; that the acquittal of Mayberry was submitted to the U. S. Court of Appeals as a specification of error in respondent's appeal.

Respondent alleges that the record disclosed he did not have a fair trial. Whereupon this Court appointed Fred Farrar, a distinguished member of the Colorado Bar, as Referee to hear the issues thus framed and make his report to the Court. The above proceedings, the issues presented, and attendant burden of proof are in harmony with our pronouncements in *People ex rel. v. Burton,* 39 Colo. 164, 88 Pac. 1063; *People ex rel. v. Laska,* 101 Colo. 221, 72 Pac. 693; *People ex rel. v. Brayton,* 100 Colo. 92, 65 P. (2d) 1438; *People ex rel. v. Edison,* 100 Colo. 574, 69 P. (2d) 246; *People ex rel. v. Laska,* 105 Colo. 426, 101 Pac. 33.

An extended hearing was held before the referee as evidenced by the voluminous record, a transcript of which was filed with his detailed and exhaustive findings, conclusions of law and recommendation of disbarment.

Summarized briefly the salient facts of the referee's findings, conclusions of law and recommendation, dated April 27, 1955, are as follows:

Respondent has been a licensed practicing attorney in this state for twenty years; is forty-five years old; married and has two children; he was district judge for a portion of the term in 1942-43; former Adams County Attorney and Assistant District Attorney of the First Judicial District; author of a pamphlet concerning income tax matters and proper methods of keeping books for income tax purposes; the joint income tax return of respondent and wife for 1949 reported an income of

$6,315.64, whereas his actual income was $9,159.94; the 1950 joint income tax return reported $9,104.20, whereas the actual income was $21,203.75.

Respondent's counsel claim that in the trial in the Federal Court he was unfairly and prejudicially surprised by testimony as to income from "pay off protection money" and urges that in a companion case *(United States v. Mayberry, supra)*, tried immediately after this case, wherein similar testimony as to "pay off protection money" was involved, defendant Mayberry was acquitted because counsel had time to obtain evidence to refute testimony in reference to this "pay off protection money" income. The referee finds this contention of surprise inconsistent with the evidence because the evidence discloses that federal tax agents, investigating respondent's books long prior to the trial, asked him if he had received any money from this source. The validity of this finding by the referee is supported by the opinion in *Rubenstein v. United States,* 214 F. 2d 667, wherein, at page 669, is the following statement:

"The record shows that the appellant upon two different occasions voluntarily appeared before revenue agents and fully discussed his returns as to his own figures and theirs concerning his 1946 return and those of previous years so that in advance of the trial he was fully advised as to the nature of the government's claim, thereby eliminating any element of surprise upon the trial."

Failure to grant the motion for bill of particulars did not constitute an abuse of discretion.

Respondent admitted schedules of unreported income tax prepared by government agents were correct; to wit, 1949, $1,645.99; 1950, $2,967.11.

The referee found, and the evidence disclosed, that respondent had deposited in the Colorado National Bank a fee of $4,000.00 from an estate and had not reported same; respondent's explanation of the discrepancies between his reported income and actual income was "sloppy

bookkeeping" and press of business. Totalling the above figures the referee finds unreported income of $8,613.10 exclusive of the so-called "pay off protection money."

On March 17, 1952, respondent wrote a letter to the Collector of Internal Revenue enclosing a check for $1813.02 based upon income return omissions of $7500.00, though the government tax agents claimed omissions in the amount of $6500.00. The Referee in his findings comments upon this, and asks why respondent offered more than the government's claim unless he had in mind the protection payments. In fairness to respondent, we will take notice of the insistence of his counsel that this letter and tendered payment was on suggestion of said counsel and should not be construed as raising an unfavorable implication against respondent.

As to the "pay off protection money" the revenue therefrom was from slot machines, a percentage of which was placed in envelopes and on occasions these envelopes were delivered to respondent. In the companion case, tried subsequent to respondent's case, defendant therein was acquitted, but the referee found that the "pay off protection money" consisted of but one phase of the evidence in reference to the deficiency of respondent's income tax returns, the rest being admitted deficiencies of reported income from respondent's law practice.

The referee found that respondent kept $10,000.00 in currency, at his home in a tin can; had three separate bank accounts, and was attorney for a bank; that there was evidence by an associate that money was kept by respondent in his office in a manila envelope.

Respondent appealed his conviction to the United States Court of Appeals, Tenth Circuit, urging, among other alleged errors, the admission of the testimony in reference to the protection money income. That court upheld the conviction in the trial court.

The report of the referee contains the following:

"The Referee has endeavored to discern and consider all facts or circumstances which in a proceeding of this

type might or should be taken into consideration toward extenuating or excusing respondent's conduct or dereliction, and which resulted in his conviction. The Referee finds none. * * * His education and training, his experience as a judge and as a practicing lawyer clearly negative any contention that he was derelict through lack of knowledge or inexperience or through inexcusible mistakes or misjudgment. His conduct was obviously deliberate."

The referee further found that the conduct of respondent was inconsistent with the standards of ethics that should be followed by attorneys at law and which this Court has a right to expect from those admitted to the practice of the profession in the State of Colorado. The referee concludes with the following:

"It is the recommendation of the Referee that the respondent, George Fischer, be disbarred from further practicing law in the State of Colorado."

It has been held by many authorities, and we adopt their reasoning, that the taint of moral turpitude is not implied as a necessary ingredient of a conviction under section 145 (b) of the Internal Revenue Code, 26 U.S.C., section 145 (b), of wilfully attempting to evade and defeat income taxes. *In re Hallinan,* 43 Cal. 2d 243, 272 P. (2d) 768, and cases therein cited.

In the instant case, from the record of respondent's trial in the federal court, the transcript of the evidence therein, the evidence presented in the hearing before the referee, his findings of fact, conclusions of law and recommendation, we are inescapably drawn to the conclusion that the conduct of respondent involved moral turpitude, and an attempt to defraud the United States government. Therefore the recommendation of the referee is sustained and adopted. See *People ex rel. v. Heald,* 123 Colo. 390, 229 P. (2d) 665.

Accordingly it is the judgment of this Court that respondent be prohibited from the further practice of law in the State of Colorado; that his license as an attorney

and counselor at law be revoked; and that his name be stricken from the roll of attorneys.